JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV 5198

------------------------------------------------------X
SIFANDROS CARRIERS LTD.,                    :       13 CV
                    Plaintiff,              :
                                            :       ECF CASE
         - against -                        :
                                            :
LMJ INTERNATIONAL LTD.,                     :
                    Defendant.              :
------------------------------------------------------X



RECEIVED JUL 25 2013 U.S.D.C. S.D.N.Y. CASHIERS

## VERIFIED COMPLAINT

Plaintiff, SIFANDROS CARRIERS LTD. (hereafter referred to as "SIFANDROS" or "Plaintiff"), by and through its attorneys, Lennon, Murphy, Caulfield & Phillips, LLC, as and for its Verified Complaint against the Defendant, LMJ INTERNATIONAL LTD. (hereafter referred to as "LMJ" or Defendant) alleges, upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and also this Court's federal question jurisdiction, 28 United States Code § 1331.

2.      At all times material to this action, Plaintiff was, and still is, a company duly organized and operating under the laws of Malta.

3.      Upon information and belief, Defendant JLM was, and still is, a foreign corporation or other business entity organized under and existing by virtue of foreign law, with an office in Kolkata, India.

4.      Plaintiff Sifandros is the owner of the commercial motor vessel "GANT VISION" (hereafter referred to as "the Vessel").

5. Plaintiff Sifandros voyage chartered the Vessel to Defendant LMJ pursuant to a voyage charter party dated April 2, 2008 (hereafter referred to as "the charter.").

6. Pursuant to the charter the Vessel was obligated to carry iron ore fine in bulk from Haldia and Paradip, India to a safe port in China.

7. Plaintiff fulfilled its obligations under the charter and safely delivered Defendant's cargo but a dispute arose between the parties with respect to Plaintiff's claims for freight and demurrage due and owing under the charter.

8. Clause 44 of the rider clauses to the charter contains an English law and arbitration clause mandating that any dispute arising under the charter shall be resolved at arbitration in London, England.

9. Pursuant to the aforesaid charter clause the Plaintiff commenced arbitration against Defendant or May 25, 2011 and thereafter had an arbitrator appointed on behalf of Defendant due to the neglect and default of the Defendant to appoint an arbitrator on its own behalf.

10. Thereafter, Plaintiff submitted its claim submissions to the arbitration tribunal and after the Defendant was afforded several opportunities and eventually directed to submit their defense submission no later than August 28, 2012 which it failed to do.

11. The arbitration tribunal thereafter considered the submissions that had been made and rendered an award in Plaintiff's favor as set forth in a Final Award dated September 21, 2012. *A copy of the Final Award is attached hereto as Exhibit 1.*

12. As set forth in the Final Award, Plaintiff was determined to have succeeded on its claims against the Defendant in the following amounts:

|   |   |   |   |   |
|---|---|---|---|---|
| A. | Unpaid Freight: | €38,998.67 | [$51,199.35] |
|    | Interest: | €12,694.88 | [$16,673.18] |
|    | SUB-TOTAL: | €51,692.88 | [$67,872.53] |
| B. | Demurrage: | $553,378.68. | |
|    | Interest: | $179,640.26 | |
|    | SUB-TOTAL: | $733,018.94 | |
|    | TOTAL: | $800,891.47. | |

13. As also set forth in the Final Award, the Plaintiff was awarded recovery of the costs, and interest thereon, incurred in the arbitration. As best as may be presently estimated Plaintiff has incurred the following recoverable costs and fees in the arbitration:

|   |   |   |
|---|---|---|
| A. | Costs: | £5,680 [$8,711.42] |
|    | Interest: | $570.61 |
|    | TOTAL: | $9,282.03. |

14. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District, including specifically a bank account which may be located at Bank of Baroda, which are believed to be due and owing to the Defendant.

15. The Plaintiff seeks an order from this court directing the Clerk of Court to

3

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by any garnishee(s) within the District, for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claim as described above.

16. The Plaintiff also seeks an Order from this Court recognizing, confirming and enforcing Final London arbitration award in Plaintiff's favor pursuant to 9 U.S.C. §§ 201 *et seq.*

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against it in the sum of **$810,173.50.**

B. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$810,173.50** belonging to, due or being transferred to, from, or for the benefit of the Defendant, including, but not limited to, such property as may be held, received or transferred in Defendant's name, or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions, including specifically the Bank of Baroda, or such other garnishes to be named, any and all of which may be found within the District of this Court, and that all persons

4

claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

    C.    That pursuant to 9 U.S.C. §§ 201 *et seq.* this Court recognize and confirm the final London arbitration award rendered on the claims had herein as a judgment of this Court;

    D.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

    E.    That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

    F.    That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, NY
       July 23, 2013

                                      The Plaintiff,
                                      SIFANDROS CARRIERS, LTD.

                                      By: _____
                                      Patrick F. Lennon
                                      Kevin J. Lennon
                                      LENNON, MURPHY, CAULFIELD
                                         & PHIILPS, LLC
                                        The GrayBar Building
                                        420 Lexington Avenue, Suite 301
                                        New York, NY  10170
                                        (212) 490-6050 - phone
                                        (212) 490-6070 - facsimile
                                        plennon@lmcplegal.com
                                        klennon@lmcplegal.com

## **ATTORNEY'S VERIFICATION**

State of Connecticut  )
                      )   ss.:   Southport
County of Fairfield   )

1. My name is Kevin J. Lennon.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am a partner in the firm of Lennon, Murphy, Caulfield & Phillips, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:   July 25, 2013
         Southport, CT

_____
Kevin J. Lennon

# EXHIBIT 1

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND</u>

<u>IN THE MATTER OF AN ARBITRATION</u>

BETWEEN:

SIFANDROS CARRIERS LTD

<u>Claimants/Owners</u>

and

LMJ INTERNATIONAL LTD

<u>Respondents/Charterers</u>

<u>M/V GANT VISION</u>

<u>Charterparty dated 2 April 2008</u>

FINAL AWARD

Introduction

1. By a voyage charterparty dated 2 April 2008 on the Gencon 1994 form with additions and amendments evidenced by a fixture recap dated 2 April 2008 (hereafter "the charter"), the Claimants (hereafter "Owners") chartered the MV "Gant Vision" to the Respondents (hereafter "Charterers") for the carriage of iron ore fines in bulk from Haldia and Paradip, India to a safe port in China.

2. The charter was duly performed but a dispute arose between the parties, Owners claiming that €38,998.67 by way of freight and €368,919.12 alternatively US$553,378.68 by way of demurrage was unpaid.

3. The charter, by clause 44 of the Rider Clauses, provided as follows:

> "*ARBITRATION CLAUSE*
>
> *ALL DISPUTES OR DIFFERENCES ARISING OUT OF OR UNDER THIS CONTRACT WHICH CAN NOT BE AMICABLY RESOLVED SHALL BE REFERRED TO ARBITRATION IN LONDON AND ENGLISH LAW TO APPLY.*
>
> *UNLESS THE PARTIES AGREE UPON A SOLE ARBITRATOR, ONE ARBITRATOR SHALL BE APPOINTED BY EACH PARTY. IN THE CASE OF ARBITRATION ON DOCUMENTS, IF THE TWO ARBITRATORS SO APPOINTED ARE IN AGREEMENT THEIR DECISION SHALL BE FINAL. IN ALL OTHER CASES THE ARBITRATORS SO APPOINTED SHALL APPOINT A THIRD ARBITRATOR AND THE REFERENCE SHALL BE TO THE THREE- MAN TRIBUNAL THUS CONSTITUTED.*
>
> *...*
>
> *IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, WHETHER ORIGINALLY OR BY WAY OF SUBSTITUTION FOR TWO WEEKS AFTER THE OTHER PARTY, HAVING APPOINTED THEIR ARBITRATOR, HAS (BY TELEX FAX OR LETTER) CALLED UPON THE DEFAULTING PARTY TO MAKE THE APPOINTMENT THE PRESIDENT FOR THE TIME BEING OF THE LONDON MARITIME ARBITRATORS ASSOCIATION SHALL,*

> *UPON APPLICATION OF THE OTHER PARTY, APPOINT AN ARBITRATOR ON BEHALF OF THE DEFAULTING PARTY AND THAT ARBITRATOR SHALL HAVE THE LIKE POWERS TO ACT IN THE REFERENCE AND MAKE AN AWARD ...*
>
> *THIS CONTRACT IS GOVERNED BY ENGLISH LAW AND THERE SHALL APPLY TO ALL PROCEEDINGS UNDER THIS CLAUSE THE TERMS OF THE LONDON MARITIME ARBITRATORS ASSOCIATION CURRENT AT THE TIME WHEN THE ARBITRATION PROCEEDINGS WERE COMMENCED. ALL APPOINTEES SHALL BE MEMBERS OF THE ASSOCIATION."*

4. Pursuant to the said provision in due course Owners appointed me Christopher Moss, a member of the LMAA, of 4 Charlotte Place, London, SW1V 1DP as their arbitrator. By an email dated 29 July 2011 from Bose & Mitra on their behalf, Owners asked the President of the LMAA to appoint a second arbitrator, claiming that Owners had intimated the appointment of their arbitrator to Charterers, that by a letter dated 25 May 2011 they had called upon Charterers within two weeks to appoint their arbitrator and that they had received no response. In consequence, the President duly appointed me Anthony Hallgarten QC, a member of the LMAA, of 20 Essex Street, London, WC2 3AL to be the second arbitrator.

5. Owners' case was set out in Claim Submissions dated 23 May 2012, whereby they sought payment of the above sums, together with interest and costs.

6. By an email dated 29 May 2012, the tribunal ordered Charterers to serve Defence submissions by 28 June 2012. No such submissions were served, whereby by a further email dated 5 July 2012, the tribunal made a final order that such submissions be served by 10 July 2012.

7. Again there was no response to such email or order, whereby by an email dated 21 August the tribunal made a final and peremptory order that Defence submissions be served by 28 August 2012, going on to state as follows:

> "The Respondent should be fully aware that if Defence submissions are no served within this further, final period, the tribunal will be bound to conclude that despite having been given every reasonable opportunity to participate in the arbitration, the Respondent has decided to take no part.
>
> Should the situation arise, the tribunal will consider the documents and submissions served on behalf of the Claimant and, if appropriate, proceed to an Award..."

8. No Defence submissions were served by 28 August 2012, and indeed as at the date hereof no communication of any sort has been received by the tribunal from Charterers in response to the tribunal's email dated 21 August 2012.

9. In the circumstances, as indicated in the tribunal's email of 21 August 2012, we have considered the documents and submissions served on behalf of Owners, and have duly concluded it appropriate to proceed to an Award.

10. In so acting, we have been conscious that, despite the absence of Defence submissions, it was for Owners to establish their case. For the reasons set out hereafter, we are satisfied that Owners have indeed done so.

Unpaid Freight

11. The charter by clause 20 provided that freight was payable at US$47.00 per mt, less commission (3.75%) and OAP max US$2,500.00, within 4 banking days after completion of loading. The vessel loaded a quantity of 42,400 mt, and we deduce that applying the above formula, freight fell due in the net sum of US$1,915,570.00.

12. Clause 20 also provided Charterers with the option of paying freight in Euros at an exchange rate of 1.50. Charterers exercised that option, in that they paid €1,238,048.00, but applying the stipulated exchange rate above, such payment should have been in the sum of €1,277,046.67, leaving a shortfall of €38,998.67.

13. We can see no justification for that shortfall.

Demurrage

14. The charter by its Rider Clauses provided as follows:

"*CLAUSE 22*:

*LOADING RATE :   HALDIA 5000 PWWD SHINC AT BERTH/ PARADIP 7000 MT PWWD SHINC AT BERTH BSS 4X30 T CRANES, PRORATE IF LESS AND OWNERS CONFIRM VSL CRANE SERVE ALL HO/ HA*

*DISCHARGING RATE :- 10,000 MT PWWD SHINC AT BERTH BSS 4X30T CRANES, PRORATA IF LESS, RAIN DELAYS AND DELAYS DUE TO PORT MACHINERY/ MECHANICAL LOADER BREAK DOWN NOT TO COUNT AS LAYTIME.*

*SHORE CRNS COST OWNERS ACCOUTNIN CASE OF VSL GEARS FAULT OR IF OWNS CHOOSE TO USE SAME.*

*AT LOAD PORT HALDIA 24HRS FREE TIME (TURN TIME) AND AT PARADIP 12HRS FREE TIME/(TURN TIME) TO BE ALLOWED AND LAYTIME TO COMMENCE FREE TIME. AFTER VESSELS ARRIVED ANCHORAGE AT HALDIA/PARADIP PORT UNLESS LOADING COMMENCES EARLIER IN WHICH CASE LAYTIME TO COMMENCE UPON COMMENCEMENT OF LOAD*

*OPERATIONS. TIME USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT AS ACTUAL TIME.*

<u>*CLAUSE 23*</u>*:*

*CHARTERERS ARE TO PAY DEMURRAGE AT THE RATE OF (USD 37,000/- PDPR HD AT BENDS) PER DAY PRORATA FOR ANY PART OF A DAY AT BOTH ENDS AND OWNERS ARE TO PAY CHARTERERS DESPATCH MONEY AT HALF THE DEMURRAGE RATE PER DAY OR PRO RATA FOR ANY PART OF A DAY FOR WORKING TIME SAVED AT BOTH ENDS.*

*RELATED DOCUMENTS, NOTICE OF READINESS AND STATEMENT OF FACTS FOR DEMURRAGE/ DESPATCH CALCULATIONS MUST BE SIGNED AND STAMPED BY THE RELEVANT PARTIES AT LOAD AND DISCHARGE PORT(S) PROVIDED SHIPPERS /RECEIVERS/AGENTS ARE PRESENT/ AVAILABLE ON BOARD UPON COMPLETION OF LOADING/DISCHARGING.*

*DEMURRAGE AND DESPATCH PAYMENT IS TO BE ARRANGED BY THE CHARTERERS/OWNERS WITHIN /LATEST 15 DAYS AFTER COMPLETION OF DISCHARGE OF CARGO/ COMPLETION OF VOYAGE AND PRESENTATION BY THE OWNERS ALL RELEVANT SUPPORTING DOCUMENTS FOR LAYTIME CALCULATIONS INCLUDING TIME SHEETS, STATEMENT OF FACTS, NOTICE OF READINESS AND OWNERS/ MASTERS E.T.C. NOTICES FOR BOTH LOADING AND DISCHARGING PORT(S). COPIES ACCEPTED.*

> *LAYTIME IS TO BE REVERSIBLE BETWEEN LOADING PORTS BUT NOT REVERSIBLE BETWEEN LOADING / DISCHARGE PORTS."*

15. The vessel arrived/ anchored at Sandheads, Haldia and tendered her NOR at 2300 on 4 April 2008, being in all aspects ready to load and accept her cargo of 19,000 mt iron ore fines. The vessel waited for a berth until 17 April 2008. According to a note made by Charterers on the Statement of Facts, the NOR was only accepted by them at 0635 on 18 April 2008 after completion of the hatch inspection, but we can see nothing in the charter which might justify such postponement to the running of laytime, which in our view began at 0001 On 5 April 2008.

16. Thereafter, giving credit for turn time, laytime expired at 0325 on 13 April 2008, and Owners claimed that demurrage accrued for a period of 6 days 9 hours 37 minutes between that time and 0300 on 20 April 2008. According to a note on the Statement of Facts, Charterers contended that time ceased to run between 0353 on 17 April 2008 and 0825 on 18 April 2008 because such represented shifting time from anchorage to berth. In their calculations Owners did indeed deduct shifting time, but in our view they were correct in saying that such time ceased at 1705 on 17 April 2008, when the vessel reached her first berth; we can see no ground for saying that time did not count thereafter.

17. Finally in respect of Haldia, on the Statement of Facts Charterers contended that time ceased to count at 0200 rather than 0300 on 20 April 2008, because loading had been completed and the vessel was waiting for a pilot; but such ignores the fact that this hour was occupied by the draft survey verifying the quantity to be loaded.

18. In our view, therefore, demurrage at Haldia did indeed accrue as alleged.

19. Turning to Paradip, the vessel arrived and tendered NOR at 1100 on 21 April 2008 to load her remaining cargo of 23,400 mt of iron ore fines. Owners claimed that time started to count forthwith and that, after giving credit for turn time and time shifting to berth, further demurrage accrued until 2300 on 29 April 2008 when loading was completed, making 14 days 6 hours 7 minutes loadport demurrage in total.

20. By a note on the Statement of Facts, Charterers contended that time only counted from 0930 on 22 April 2008 when the NOR was accepted, but as with Haldia, we can see no reason why time did not count as claimed by Owners. By a further note, Charterers contended that time shifting to berth continued beyond the period for which Owners had given credit – namely until 1050 on 27 April 2008, but we see no justification for this: the extra period of 55 minutes in respect whereof Charterers sought credit was occupied with the draft survey.

21. In our view, therefore, demurrage at Paradip did indeed accrue as alleged, whereby together with Haldia, demurrage in the net sum of US$507,651.24 fell due from Charterers.

22. Having loaded her cargo as set out above, the vessel proceeded to Xingang, China for discharge thereof. She arrived on and tendered NOR at 0005 on 15 May 2008. She completed discharging her cargo at 1500 on 20 May 2008.

23. Owners claimed that, after giving credit for shifting time, laytime expired at 0811 on 19 May 2008, and that 1 day 6 hours and 49 minutes demurrage then accrued.

24. There is no evidence that Charterers took exception to Owners' calculation, and in our view demurrage accrued due in respect of time at Xingang in the net sum of US$45,727.44.

### Currency of Claim for Demurrage

25. The charter gave to Charterers the option to pay Euros only in respect of freight, not demurrage. In any event, there was no evidence that Charterers would have wished to make payment in Euros. We therefore consider that, in respect of demurrage, an award in US$ is appropriate. The amounts under paras. 20 and 23 above total the US$553,378.68 claimed by Owners.

### Interest and costs

26. In our view, Charterers should pay both, as set out in para.28 below.

### Seat of the Arbitration

27. The seat of the arbitration is London

### Award

28. Being agreed as set out above, we therefore AWARD, ADJUDGE, ORDER and DIRECT that:

    (i) Charterers do pay €38,998.00 by way of unpaid freight.

    (ii) Charterers do pay interest on the said sum at the rate of 5% per annum and pro rata compounded at three monthly rests, from 1 May 2008 until payment.

    (iii) Charterers do pay US$553,378.68 by way of unpaid freight.

    (iv) Charterers do pay interest on the said sum at the rate of 5% per annum, and pro rata compounded at three monthly rests from 6 May 2008 until payment.

(v) Charterers do pay the costs of this our Award, including all interlocutory fees, but that if Owners have in the first instance made such payment, they shall be reimbursed by Charterers, with Charterers paying interest thereon at 5% per annum and pro rata compounded at three monthly rests from the date of Owners' said payment until reimbursement.

(vi) Without prejudice to sub-para. (v) above, Charterers have permission within six weeks from the date hereof to apply that interlocutory fees incurred prior to 25 May 2011 be borne by Owners.

(vii) Charterers do pay Owners' costs of the reference on the standard basis together with interest thereon at 5% per annum and pro rata, compounded at three monthly rests from the date of this award until payment.

(viii) We reserve jurisdiction to deal with and assess costs under sub-paras. (vi) and (vii) above.

(ix) This award is final as to all matters determined herein.

...................................................  ...................................................
Christopher Moss                                     Anthony Hallgarten QC


...................................................  ...................................................
(witness)                                            (witness)


Dated London 21st September 2012